In the Interest of the MILLER CHILDREN.

No. 2–56739.

Supreme Court of Iowa.

April 16, 1975.

James L. Waite, LeMars, for appellant.

E. Kevin Kelley, Sioux City, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

This appeal is from a juvenile court placement order returning to their mother four

children adjudicated dependent and neglected. We affirm.

In 1967 Alvin and Bernice Miller were divorced. Custody of their three children, James (born July 30, 1961), Judyth (born March 1, 1963) and Jonathan (born October 11, 1964) was awarded to Bernice. On April 16, 1967, following the divorce, Bernice gave birth to Bradley, whose father is unknown.

In August of 1971 Bernice informed Woodbury county department of social services she was having financial and disciplinary problems with the children and stated she was currently unable to care for them. The Woodbury county attorney petitioned juvenile court to declare them dependent and neglected children pursuant to chapter 232, The Code. This was a necessary procedure to permit the Woodbury department of social welfare to provide foster home care for the children.

At the August 23, 1971 hearing all parties were represented including the children and Alvin Miller, father of the oldest three. The juvenile court adjudged the children dependent and neglected, transferred their legal custody to the department "for placement in an appropriate foster home" and ordered Alvin to pay $50 per month toward their support. James and Judyth were placed in one foster home, Jonathan and Bradley in another.

A January 17, 1972, review hearing resulted in an order which returned "temporary custody" of James and Judyth to Bernice; gave "temporary custody" of Jonathan and Bradley to Alvin; and directed the department to supervise these placements closely and report its findings to the court upon review hearing.

Subsequent review hearings were held. See § 232.36, The Code. Placement of the children remained unchanged until August 22, 1973, when a juvenile court order was entered placing all four children with Bernice while custody remained with the department. In so ruling the court repeated an observation made by a substitute juvenile

referee, Arlo Swalve (a department employee), that "the natural mother, Bernice Miller, having improved her ways should have placement of all children with her."

Alvin "appealed" the referee's ruling and another hearing ensued in juvenile court. After considering testimony from several witnesses, the court held the prior order should stand. Alvin now appeals to this court requesting placement of all four children with him.

I. At the threshold we confront a controversy concerning our scope of review. Alvin asserts our review is de novo. See In re Augustus, 158 N.W.2d 625, 630 (Iowa 1968); State v. Sanders, 256 Iowa 999, 1007, 129 N.W.2d 602, 607 (1964). Bernice contends we may reverse only upon a finding juvenile court abused its discretion, citing State v. Visser, 249 Iowa 763, 765, 88 N.W.2d 925, 926 (1958). See In Interest of Freund, 216 N.W.2d 366, 368–69 (Iowa 1974).

■ Our survey of this court's decisions since 1965 under chapter 232, The Code, discloses we review de novo. This is true of adjudications of neglect and dependency, In Interest of Osborn, 220 N.W.2d 632, 634 (Iowa 1974); In re Delaney, 185 N.W.2d 726, 728 (Iowa 1971), termination of parent-child relationships, In Interest of Wardle, 207 N.W.2d 554, 562 (Iowa 1973); In re McGlasson, 195 N.W.2d 116, 117 (Iowa 1972), and delinquency proceedings. In re Henderson, 199 N.W.2d 111, 116, 124 (Iowa 1972).

Indeed, a de novo review is indicated by the relevant portion of § 232.58, The Code:

> *232.58 Appeal.* An interested party aggrieved by *any* order or decree of the court may appeal to the supreme court for *review* of questions of law and *fact.* * * * " (Emphasis supplied.)

This statutory right to review of *any* juvenile court order seems to dispose of an otherwise tenable argument in Bernice's brief that, after all, we are confronted with only a placement order, the lower court still

retains jurisdiction, and legal custody remains in the department. Not only do such orders, as disclosed here, frequently determine a child's fate for years, it was just such orders we reviewed *de novo* in In re Augustus, and State v. Sanders, supra. In In re Karwath, 199 N.W.2d 147 (Iowa 1972) we reviewed *de novo* an order for medical treatment of children which was entered more than a year following adjudication of their dependency.

Nor does a close analysis of State v. Visser, supra, support a restricted review under present statutory law. The "discretion" referred to by the *Visser* court was the discretion the legislature left to the court to determine on a case-to-case basis the meaning of "unfit surroundings" vis-a-vis attempting a statutory formulation of a specific meaning for the term. While the court then resorted to the abuse-of-discretion rubric, at that time there was no statute governing appeals. Section 232.58, quoted supra, was not enacted until seven years later. Acts of the 61 G.A., Chapter 215, Section 59 (1965). The same reference to the juvenile court's "discretion" appears in In re Morrison, 259 Iowa 301, 312, 144 N.W.2d 97, 104 (1966) which followed the 1965 amendments to chapter 232. But in that case we specifically stated our review was *de novo*. *Id.*, 259 Iowa at 306, 144 N.W.2d at 100.

In Interest of Freund, supra, which applied the abuse-of-discretion rule, presented exceptional circumstances not likely to recur. The appeal was from an order continuing a hearing (to determine neglect and dependency and to terminate the parent-child relationship) as well as an interim order placing the children with their father for a time specifically limited. See § 232.27, The Code. The juvenile court's action was in the nature of an order for trial adjournment or reopening, with which we do not interfere in absence of an abuse of discretion. See rule 193, Rules of Civil Procedure; State v. Mason, 203 N.W.2d 292 (Iowa 1972); Anderson v. City of Council Bluffs, 195 N.W.2d 373 (Iowa 1972); Put-nam v. Bussing, 221 Iowa 871, 266 N.W. 559 (1936). The *Freund* opinion discloses both parties agreed this court had nothing to review *de novo*. Given the facts now before us, the *Freund* decision is inapposite.

■ We hold our review here is *de novo*. While not all are applicable in every chapter 232 appeal, we hold to those general principles summarized in In re DeRocher, 187 N.W.2d 730, 731 (Iowa 1971):

"* * * (1) Our review is de novo; (2) a presumption exists that the best welfare of a minor child is served by parental custody; (3) this presumption is rebuttable; (4) the findings of the lower court are entitled to substantial weight but we are not bound by them; and (5) the provisions of chapter 232 are to be liberally construed to protect the welfare of the child."

The conclusion we reach relating to our scope of review does not make our ultimate decision easier. Apparently there was no attempt in prior review hearings to comply with record requirements of § 232.32, The Code, nor is there any evidence these parties waived the right followed by court order as permitted by that statute. See Chambers v. District Court of Dubuque County, 261 Iowa 31, 35–36, 152 N.W.2d 818, 820–21 (1967). Both parties apparently agree the juvenile court rightly relied in part on such unreported testimony, and counsel have attempted to summarize it by a factual stipulation. Needless to say such warmed-over version, however conscientiously prepared, loses the flavor and detail of the transcript-supported appendix contemplated by our rules.

II. In our *de novo* review we turn to additional evidence before the court below.

Alvin failed to make child support payments in any consequential amount from the time of the 1967 divorce until the current controversy arose. He had seldom seen or visited the children during this four year interval. Alvin has been regularly employed with a construction company for ten years and has a good work record. He

testified to having no problems, financial or disciplinary, caring for the two children.

Alvin's drinking was a contributing factor in the dissolution of his marriage to Bernice, and continued until at least November 1971, when his driver's license was revoked following an OMVUI violation. His character image was not enhanced by his initial denial under oath of such an arrest.

Alvin married Marilyn at an unspecified date following his divorce from Bernice. The stipulation discloses that a few months before this proceeding was instituted Marilyn filed, and subsequently dismissed, a petition for dissolution of her marriage to Alvin.

Alvin and Marilyn rented a residence in LeMars to provide a home for Jonathan and Bradley. A Plymouth county social worker tersely testified there was no physical reason this clean dwelling could not be a good home. There is nothing before us to show these children received poor care in Alvin's home, other than unsubstantiated assertions of physical injuries resulting from excessive disciplinary measures. Under a court order entered January 9, 1973, Alvin was to transport these children to Bernice's home for visitation every two weeks. He could not justify his failure to follow this instruction and admitted he did not comply in the two-month period prior to final hearing.

A protective service worker with the Woodbury county department of social services, Mr. Ness Bashara, testified extensively at the September 20, 1973 hearing and his testimony is before us. He testified the financial and personal problems which had initially caused Bernice to turn to the department for help had been resolved following weekly counseling with her and the family. She was employed and had been cooperative, conscientious and achieved real progress. In his professional opinion, the two boys should be returned to her.

Bernice, on the witness stand, stated she was prepared and ready to reunite her family. She was not cross-examined.

The guardian ad litem of the children recommended on final hearing the children should "stay where they are" (two with Bernice, two with Alvin) and visitation should be spelled out and rigidly enforced. This solution of divided placement runs counter to our policy that siblings should not be separated without good and compelling reasons. In re Marriage of Winter, 223 N.W.2d 165, 168 (Iowa 1974); Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970).

In view of the skimpy record in this appeal we deem it of special significance that the court below heard Bernice, Alvin and Marilyn testify. Trial court was thus able to view and evaluate the demeanor and credibility of these potential custodians. The finding of the court below, that all of the children should be reunited in their mother's home, should be given substantial weight. See In re DeRocher, supra; In re Augustus, supra at 627. We are most at ease in applying that rule where, as here, our *de novo* factual review leaves the decisional scales in virtual equipoise.

We do not hold Bernice should be rewarded by return of her children because of her cooperation with the Woodbury department of social services any more than we would hold Alvin should be punished by retrieving the two boys from him because his initial four-year neglect may have contributed to the financial and disciplinary problems which caused Bernice to lose them. A child's custody or placement is not granted or withheld from either parent as reward or punishment. See In re Marriage of Bowen, 219 N.W.2d 683, 687 (Iowa 1974); Carey v. Carey, 211 N.W.2d 342, 345 (Iowa 1973).

In affirming, we are also influenced by the fact the juvenile court will retain jurisdiction of this matter and legal custody shall remain with the Woodbury department of social services although placement of all four children is with Bernice. It is to be hoped Alvin will continue his commenda-

ble interest in, and concern with, these children under visitation privileges provided in the order appealed from.

Affirmed.