In the Interest of Jeffrey Scott
KELLY, a child.

Nos. 3–58162, 3–58349.

Supreme Court of Iowa.

Dec. 17, 1975.

Norman, Younggren & Webber, Keokuk, for appellant.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Sp. Asst. Atty. Gen., Theodore R. Boecker, Asst. Atty. Gen., and Barry M. Anderson, Lee County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

This appeal involves the propriety of an order placing a child in the Iowa Training School for Boys and the constitutionality of a statute denying a stay pending the child's appeal.

Jeffrey Scott Kelly, born February 8, 1959, lived with his mother and stepfather in Keokuk, Iowa, at the inception of these proceedings. In 1973 the county attorney filed a petition charging that Jeffrey was dependent, neglected, and delinquent. The county attorney twice amended the petition, and on July 19, 1974, a judge of juvenile court (Hendrickson, J.) held a hearing and found Jeffrey to be dependent, neglected, and delinquent. This valid finding is the point of departure for examining all the dispositional proceedings which followed. In the same order in which he made that finding, Judge Hendrickson ruled by way of disposition that "the custody of the said minor be placed with the Department of Social Services, State of Iowa, for placement in the State Juvenile Home at Toledo, Iowa," and that the matter "will be continued until further order of this Court."

Pursuant to Judge Hendrickson's order, Jeffrey went to Toledo, but soon after he entered the institution he cut his wrist in an apparent suicide attempt. The authorities there thought he needed evaluation and treatment and sent him to the Iowa Mental Health Institute at Mt. Pleasant. Jeffrey and two other boys thereafter ran away from the Institute; the State claims they went to Missouri in a stolen motor vehicle.

After the boys were returned to Mt. Pleasant, staff members heard rumors that the boys were going to "mutiny." Jeffrey claims that authorities at the Institute thereafter mistreated him and the other boys.

Jeffrey's mother objected to the treatment at Mt. Pleasant, and another judge of juvenile court (Cahill, J.) held a hearing on November 4, 1974. He let the original order stand but authorized the probation officer to place Jeffrey temporarily in the Nancy Hunt Home in Ft. Madison pending further hearing on the alleged abuse at Mt. Pleasant. When problems developed at that Home, Judge Cahill ordered Jeffrey returned to the Juvenile Home at Toledo pending the hearing regarding Mt. Pleasant. While at the Toledo Home the second time, Jeffrey ran away at least once.

On January 24, 1975, another judicial officer of juvenile court (Phelan, Judicial Magistrate) conducted a hearing. This extensive hearing dealt with the Mt. Pleasant incidents. After the hearing, the magistrate ordered Jeffrey evaluated at the Iowa Training School for Boys preparatory to a full hearing regarding proper disposition of Jeffrey's case on its merits. The School made the evaluation and rendered a report.

On March 7, 1975, the magistrate held the final hearing in the series and considered the Training School report, other reports in the case, and oral testimony. The gist of the Training School's report was that the best opportunity for truly involving Jeffrey in a therapeutic process would be at that School. At the conclusion of the hearing, the magistrate confirmed Judge Hendrickson's original order of July 19, 1974, but changed the placement from the Juvenile Home to "the Iowa State Training School for Boys . . . until further order of this Court . . . ."

Jeffrey moved the magistrate to stay the placement order pending an appeal from that order, contending the statute which provides that appeals do not suspend such orders is unconstitutional. See Code 1975,

§ 232.58. The magistrate overruled the motion.

Jeffrey appealed, raising several issues. The parties involved appeared and had counsel at the various hearings.

I. *Retention of Jurisdiction Originally.* Jeffrey first contends that when Judge Hendrickson placed custody with the Department of Social Services the juvenile court lost jurisdiction to the Department despite the judge's attempted reservation of jurisdiction by continuing the matter; hence, Jeffrey says, all of the subsequent dispositional proceedings by the court were void.

We pass the question whether the three subsequent proceedings could be considered new cases, with jurisdiction newly acquired. Jeffrey's difficulty is in the assumption that Judge Hendrickson disposed of Jeffrey as a delinquent rather than as a dependent and neglected child.

█ Section 232.33, relating to dependency and neglect, and § 232.34, relating to delinquency, list the dispositional alternatives. Subsection 4 of each section provides that the court may "[c]ommit the child to the commissioner of social services or his designee for placement." Then § 232.35 provides, "Commitment to the state director shall vest guardianship of the person of the child so committed in the state director and *shall terminate the court's jurisdiction.*" (Italics added.) Thus a juvenile court does, as Jeffrey asserts, lose jurisdiction when it commits under § 232.33(4) or § 232.34(4).

But § 232.33 contains a pertinent provision which § 232.34 does not. Under § 232.-33(3)(b), the court may on finding dependency or neglect "[t]ransfer legal custody of the child, *subject to the continued jurisdiction of the court,* to . . . the state department of social services." (Italics added.)

█ Judge Hendrickson found Jeffrey dependent and neglected and also delinquent and could dispose of the case under either § 232.33 or § 232.34, or first under one and then under the other if the first disposition did not prove successful. § 232.-36. Under § 232.33(3)(b), Judge Hendrickson could transfer custody of Jeffrey to the State Department of Social Services "subject to the continued jurisdiction of the court." From the language of Judge Hendrickson's order, this is what we think he did. Hence the juvenile court retained jurisdiction for the dispositional proceedings which followed. See *In Interest of De Rocher,* 187 N.W.2d 730 (Iowa).

Section 232.36 permits a juvenile court to make other dispositions so long as it retains jurisdiction. Since the juvenile court retained jurisdiction here, it could proceed under § 232.36 to hold the subsequent dispositional proceedings.

We thus reject Jeffrey's first contention.

█ II. *Commitment to Juvenile Home or Training School.* Next Jeffrey argues that even if the juvenile court retained jurisdiction, Magistrate Phelan could not commit him to the Training School because the record did not contain substantial evidence that he eloped to Missouri in a stolen motor vehicle and also for want of substantial evidence that he should in fact be committed to the Training School. We find Jeffrey's argument well taken that the magistrate should not have committed him to the Training School—but on a different basis than Jeffrey asserts. We also find Judge Hendrickson's original commitment to the Juvenile Home to be subject to the same infirmity.

Formerly juvenile courts could commit to specific institutions of the Department of Social Services, but in 1970 the legislature chose to let the Department select its appropriate facility for the child; the court commits to the *Department* (or *commissioner*). Code 1975, § 232.33(3)(b) and (4), § 232.34(4); 61 G.A. ch. 215, § 34(3)(b), § 35(4); 63 G.A. ch. 152, § 59, ch. 1100, §§ 1, 2.

When Judge Hendrickson originally disposed of the case, the portion of his order was of no effect in which he placed Jeffrey specifically in the Juvenile Home. His commitment of Jeffrey to the Department was proper, and the Department had authority to determine where in its facilities it could best help Jeffrey overcome his problems. Likewise, the portion of Magistrate Phelan's order placing Jeffrey specifically in the Training School was of no effect. That again was a Department decision.

■ We have authority to modify these orders. § 232.58. Pursuant to that authority, we uphold the order of Judge Hendrickson committing Jeffrey to the Department, as confirmed subsequently by Magistrate Phelan, but with the designation of particular institutions for placement deleted from the orders.

■ The Department is not restricted in this case by § 14 of the recently enacted statute, 66 G.A., ch. 142, as Judge Hendrickson adjudged Jeffrey delinquent as well as dependent and neglected (the latter designation would now be a child "in need of assistance," id. §§ 2, 6).

III. *Illegality of Proceedings.* Jeffrey contends on three grounds that the dispositional proceedings by Judge Cahill and Magistrate Phelan were illegal and that all proceedings in the case are therefore void.

■ We cannot accept the contention as to Judge Hendrickson's order. Even if the subsequent dispositional proceedings were illegal, that would not retroactively void Judge Hendrickson's valid prior order. Only the clause in Judge Hendrickson's order specifically placing Jeffrey in the Juvenile Home is void.

■ Do the three grounds Jeffrey relies on invalidate the orders of Judge Cahill and Magistrate Phelan? One ground is that Jeffrey was subjected to cruel and unusual punishment at the Mental Health Institute, a second that he did not receive speedy trial, and a third that Magistrate Phelan took on the role of advocate. We certainly do not place our stamp of approval upon the alleged acts at Mt. Pleasant, although we doubt that we have all the facts. Likewise, we disapprove of drawing out juvenile proceedings when they can be expedited. Early dispositions are important to the child's welfare, although we appreciate that the child's complications and family disruptions may render delays unavoidable. Nor should a judicial officer step out of his judicial role, although we understand that his role is not always as clear-cut in the more informal atmosphere of the juvenile proceeding as it is in a criminal trial. Nevertheless, he constitutes the bastion of due process of law for the child, the family, and the public. He must never cease to be such although tempted to be impatient in lengthy proceedings while bearing a heavy docket.

In the present proceedings, however, we are unable to see how the three grounds Jeffrey presses upon us void the orders of Judge Cahill and Magistrate Phelan. Our review of the evidence convinces us that this juvenile court reached the right decision on the merits. Jeffrey badly needs help. The Department and its resources seem the best source of that help. If the Mental Health Institute mistreated Jeffrey, if the dispositional proceedings took too long, if the magistrate became impatient, we nevertheless hold that commitment to the Department, as we have modified the orders, is right.

■ IV. *Stay Pending Appeal.* Finally Jeffrey claims our statute providing that appeals do not stay juvenile court orders, save on order of this court, constitutes unconstitutional discrimination against youths. Code 1975, § 232.58. He contrasts the right of adults convicted of crime to put in bail on appeal, except in cases of murder and treason. Code 1975, § 789.19.

We are not sure the discrimination is not the other way. In a proper case a juvenile may have his stay from this court without putting in bail or even so much as giving

his recognizance. But assuming the different treatment of youths which Jeffrey asserts, we can see very good grounds, in the absence of stay by this court, for keeping juvenile court orders in effect unless and until reversed. This may be necessary for the safety of the child and sometimes the public and more importantly, to start the child's rehabilitative process before his situation worsens. These are the kinds of special considerations which make different juvenile court procedures valid. *In re Interest of Storm*, 223 N.W.2d 170 (Iowa). Cf. *Aubry v. Gadbois*, 50 Cal.App.3d 470, 123 Cal.Rptr. 365. We thus reject Jeffrey's final contention.

We affirm the decision as modified in division II hereof.

Modified and affirmed.