In the Interest of Harry James MEEK,
a child.

No. 2–58065.

Supreme Court of Iowa.

Dec. 17, 1975.

William D. Martin, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Sp. Asst. Atty. Gen., Stephen P. O'Meara, Asst. Atty. Gen., Des Moines, and Daryl E. Roberts, County Atty., Independence, for appellee State of Iowa.

Heard by MOORE, C. J., and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

REES, Justice.

This case had its genesis in the filing on October 31, 1974, of a petition alleging the juvenile, Harry James Meek, was a delinquent child as defined by chapter 232 of the Code of Iowa, 1973. Harry was adjudicated a delinquent by order of the juvenile court on November 15. On April 4, 1975, he was ordered committed to the Director of the Bureau of Family and Children's Services of the Iowa State Department of Social Services for placement in the Iowa State Training School for Boys until he attained age 18 or was sooner released as provided by law. The juvenile now appeals, complaining of a number of alleged irregularities in juvenile court proceedings, of his detention during the pendency of the proceedings and of his ultimate commitment to the Iowa State Training School for Boys. We modify and affirm.

Harry James Meek was 16 years of age at the date of the filing of the petition alleging delinquency on October 31, 1974. In its order adjudicating him to be a delinquent entered November 15, 1974, the court specifically found Meek had made a telephone call to the high school in Independence on the previous September 16, informing the school authorities a bomb had been planted in the school and that the premises should be vacated within an hour. The court permitted him to remain at home with his mother and stepfather under the supervision of the county juvenile probation officer until he attained age 18 or until further order of court.

On the night of November 15, the same date on which Meek was adjudicated a delinquent, a fire seriously damaged the Middle School in Independence. On December 12 the probation officer and the county attorney met with the juvenile court and related certain alleged violations of the terms of Meek's supervision. The court thereupon ordered Meek admitted to the Mental Health Institute in Independence for evaluation.

During his stay at the Mental Health Institute, Meek was granted furloughs to go home. He apparently had one disagreement with another patient, and received no tutoring or schooling while he was in the Institute.

A report of the evaluation of Meek at the Institute was filed with the court on January 6, 1975. Two days later the juvenile was released from the Institute and confined in the Buchanan County jail. The January 6 report embraced a recommendation that "the boy be considered for referral to the Boys Training School at Eldora where he can receive treatment in a structured program which will offer him the needed supervision and direction." On January 13 an order was entered setting hearing on the matter for the following January 17.

On January 16 the probation officer filed a follow-up report, to which were attached statements of two witnesses, which directed the court's attention to Harry's involvement in the alleged arson at the Middle School on November 15, 1974, and an alleged arson at a garden near Jefferson School in Independence, on November 27, 1974. Also attached was a memorandum from the Iowa Department of Public Safety with regard to incidents in which Harry was involved while he was a resident of Linn County.

On the date set for hearing, January 17, no court reporter was available, and the hearing was postponed until February 7. In its order the court provided that the juvenile should be transferred to the training school in Eldora until the time for hearing. Despite such order, it appears from the record the juvenile remained in the county jail at Independence until January 26, at which time he was taken to the hospital in Cedar Rapids for surgery. He was returned to the county jail on February 3, following his hospitalization.

On February 5, 1975, the juvenile, joined by his mother and stepfather, filed a petition for a writ of habeas corpus in which they alleged Harry was being detained illegally in the county jail pursuant to the December 12 order in violation of due process of law.

Hearing was held on February 7 and on February 10. Following the first day's hearing, the court ordered the youth held during the pendency of the then present proceedings.

Subsequent to the hearing on February 10, the court entered its order dated February 11 finding Harry did in fact participate in the breakin and arson at the Middle School, and also caused a garden fire near Jefferson High School to be set, irrespective of the fact that the latter fire did not occasion damage. The court further found that prior to a disposition of the case, further information and evaluation of Harry should be accomplished at the Iowa State Training School for Boys. Harry's custody was then placed with the county probation officer for purposes of the evaluation at the training school and a social history was ordered prepared. Harry was temporarily placed in the custody of his mother and stepfather until an appointment could be arranged for his evaluation at the training school.

In its order, the court further found "the Juvenile is not being held under any of the Orders that were questioned under the Writ of Habeas Corpus and that at this time said Writ is moot and [the court] makes no ruling on the same."

Harry remained at the home of his mother and stepfather until February 27, when he was transported to Eldora for evaluation. He was later returned to his home pending a hearing to be held on April 4. Following such hearing, Harry was ordered committed to the Director of the Bureau of Family and Children's Services of the Iowa Department of Social Services for placement in the Iowa State Training School for Boys until he attained the age of 18 years or was sooner released as provided by law.

The juvenile now appeals "from all adverse rulings of the Juvenile Court and from the Orders and Decrees of Court, rendered and entered in this proceedings, which order was dated February 11, 1975, and was entered of record on or about February 14, 1975, and from each adverse order and ruling of the Court therein."

In this appeal the juvenile states the following issues for review:

(1) Juvenile court erred in issuing an ex parte order which deprived Harry of his liberty and provided for confinement at the Mental Health Institute and the county jail without notice or hearing, without the juvenile's presence to confront witnesses at the hearing and without representation of counsel.

(2) Juvenile court erred in failing to give notice of the hearing to Harry's parent prior to the juvenile's detention for an extensive period of time.

(3) Juvenile court erred in permitting the detention of the juvenile for more time than is permitted by law, since no formal pleading was presented to the court and no determination, after hearing, was made by the court that the juvenile be required to remain in custody.

(4) The juvenile was unlawfully detained in the county jail from January 8 until January 26 and from February 3 until February 7 without the protection of complete separation from adults in an adult facility,

without continued supervision and without competent medical care and schooling.

(5) Juvenile court was prejudiced by certain statements and reports in its hands before, during and after the hearings of February 7 and 10 and April 4.

(6) Juvenile court erred in permitting Bill Meister, a 17-year old witness at the February hearings, to testify to his own complicity in the arson at the Middle School without effectively advising the witness of his right to the benefit of counsel.

(7) The evidence adduced was insufficient and incompetent to support a finding Meek committed the arson at the Middle School.

I. In the first four issues stated for reviews, the juvenile attempts to establish error in connection with his detention under the court's order of December 12, 1974. Issues (1) and (2) specifically question the validity of the order itself. The third issue purports to deal with the juvenile court's finding of mootness in disposing of the petition for writ of habeas corpus. The fourth issue deals with conditions under which the juvenile was detained.

The State insists we should not reach a consideration of the merits of the first four issues, as they are not properly before us and the issue of the juvenile's petition for a writ of habeas corpus is moot. We conclude the State is correct, at least in its assertion the issues involving Harry's custody pursuant to the December 12 order are moot in light of the action of the court in disposing of the matter on February 7, 10 and 11, 1975.

The record indicates that on February 7 the court ordered Harry detained during the pendency of the proceedings. There is no indication that order suffered from any infirmity, nor is there any indication the resulting restraint was in violation of statute or constitutional mandate. Harry does not, in fact, raise any issue of invalidity of the February 7 order. The validity of his present commitment to the State Training School for Boys is the subject of later divisions of this opinion, but it must be viewed as a consequence of the hearings of February 7 and 10, and subsequent proceedings, and the orders entered pursuant thereto.

█ It is apparent from the record that on February 7 and subsequent thereto, Harry's detention was pursuant to one or more court orders completely independent of the December 12 order. Nonetheless, Harry now asks us to review the legality of his detention between December and early February. We are forced to the conclusion the order of February 7 and subsequent orders rendered moot the question of Harry's detention previous to February 7, 1975.

█ An issue is moot if it no longer presents a justiciable controversy because it has become academic or nonexistent. Cf. *State ex rel. Turner v. Midwest Development Corp.*, 210 N.W.2d 525 (Iowa 1973); *Cooley v. Ensign-Bickford Company*, 209 N.W.2d 100 (Iowa 1973). By the same token an issue is moot if an opinion thereon would be of no force or effect as to the underlying controversy. *State ex rel. Turner, supra* ; see *Nitta v. Kuda*, 249 Iowa 853, 857–858, 89 N.W.2d 149, 151–152. Any opinion dealing with matters connected with Harry's detention pursuant to the December 12 order would be academic in light of the independent force and effect of the juvenile court's orders of, and subsequent to, February 7. Such an opinion would not secure Harry's release from the training school nor redress any possible wrongs inherent in his earlier detention.

█ We therefore decline to reach the merits of the issues arising from the December 12, 1974, order and Harry's resulting detention through February 7, 1975. Similarly, the juvenile court did not err in holding the issues presented by the petition for habeas corpus moot. The sole function of the writ is to grant relief from unlawful imprisonment, and it is ordinarily effective for no other purpose. See 39 C.J.S. Habeas Corpus § 4, p. 430; *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238. "A writ

of habeas corpus should not be issued in what is a moot or practically a moot case * * *. The writ should not be granted where it would be ineffective." 39 C.J.S. Habeas Corpus § 5, p. 436. The intervening order of February 7, 1975, constituted an independent basis for Harry's further detention and rendered a habeas corpus challenge to the December 12, 1974, order ineffective to secure Harry's release.

If Harry's detention prior to February 7, 1975, was in contravention of statute or constitutional principles, it is indeed regrettable. Nonetheless, sound policy warns against the exercise of the judicial power beyond its limits of effectiveness. We therefore hold the issues raised regarding Harry's detention pursuant to the December 12, 1974, order and prior to February 7, 1975, are now moot and are not reviewable on the merits in this appeal.

■ II. We note that in his third assignment of error, Harry attacks the validity of that portion of the order dated February 11, 1975, which directed that he be committed temporarily to the training school for evaluation. The record indicates he was in the custody of his mother prior to such temporary confinement and was put back in her custody following the evaluation and pending final disposition. Even assuming arguendo the invalidity of the temporary confinement, we can grant no effective relief from it. For the reasons articulated in Division I of this opinion, we decline to review the merits of the juvenile's contention in this regard.

■ III. The remainder of the juvenile's issues stated for review are. properly reviewable. Our review is *de novo*. Rule 334, Rules of Civil Procedure; *In re Henderson*, 199 N.W.2d 111, 116 (Iowa 1972); see § 232.58, The Code, and *In Interest of Miller Children*, 228 N.W.2d 60, 61–62 (Iowa 1975). We give weight to the trial court's findings, but are not bound by them. Rule 344(f)(7) R.C.P.

IV. In his fifth issue stated for review, Harry contends the juvenile court was prej-

udiced by certain statements and reports in its hands before, during and after the hearings on February 7 and 10 and April 4, 1975. His contention is the court erred in reviewing and considering the reports, which became part of a court file, without requiring the persons making the reports to testify and to subject themselves to cross examination.

The material which the court considered, and to which Harry now objects, included a "follow-up" report dated January 16, which supplemented an earlier report prepared November 15, 1974. The pertinent portions of the "follow-up" report are set out *supra*, but we note the report included references to "charges and information" dealing with the alleged arson at Middle School and the garden fire incident near Jefferson School, attributing responsibility for both incidents to Harry. Attached to the report was a signed statement by Bill Meister that he and Harry had broken into Middle School the night of the fire and that Harry, who had remained in the school's bandroom some moments after Meister had left the building through a window, admitted upon leaving the building that he, Meek, had started a fire therein. Also attached was a "memorandum of violations" prepared by the Iowa Department of Public Safety purporting to list incidents of wrongdoing by Harry reflected by police records of the City of Cedar Rapids, where Harry apparently resided until early 1973.

Harry contends the information set out in the "follow-up" report should not have been accessible to the court, at least until they were accepted into evidence and not until the court had determined the juvenile had committed "infractions of his supervision" from other competent evidence. In support of his conclusion he cites *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

■ Harry's reliance on the above authority is misplaced in that he fails to rec-

ognize the inherent differences between the adjudicative and dispositional stages of delinquency proceedings. The adjudicatory stage is concerned solely with the determination of the merits of the allegations of delinquency, whereas the dispositional stage determines treatment if the claim of delinquency has been established. See *In re Henderson, supra,* 199 N.W.2d at 124 (concurring opinion).

■ The protections provided in *Gault* and in *Winship* were intended to be limited to the adjudicatory stage of delinquency proceedings. In *Gault,* the United States Supreme Court laid down certain due process standards applicable to juvenile proceedings to determine delinquency but expressly declined to rule upon the question of dispositional action, saying at page 27 of 387 U.S., at page 1443 of 87 S.Ct., " * * * nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child." In *Winship* the Court carefully and explicitly differentiated between the adjudicatory stage and the dispositional stage, saying:

> "This case presents the single, narrow question whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." 397 U.S. at 359, 90 S.Ct. at 1070.

A footnote to the last quoted paragraph adds:

> "As in *Gault,* 'we are not here concerned with * * * the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process.' "

Finally, at page 366 of 397 U.S., at page 1074 of 90 S.Ct., the Court added that,

> "[T]he opportunity during the post-adjudicatory or dispositional hearing for a wide-ranging review of the child's social history and for his individualized treatment will remain unimpaired."

■ Harry Meek was adjudicated a delinquent by the order of court under date November 15, 1974, from which no appeal has been taken. It is clear the February and April hearings and orders entered pursuant thereto were dispositional in nature, concerned not with a re-adjudication of delinquency, but rather with the question of whether a change of circumstances required a change in disposition, looking only to the best interests of the child. Accordingly, *Gault* and *Winship* are of no benefit to Harry on this issue.

■ Even assuming, arguendo, that the hearings were adjudicatory in nature, the mere fact the court had before it the challenged materials would not automatically require a reversal. In *Bellew v. Iowa State Highway Commission,* 171 N.W.2d 284, 291 (Iowa 1969), we said:

> "Where, then, improper evidence is admitted in the trial of an action at law, though the trial be to the court, prejudice is presumed and judgment will be reversed unless the record shows affirmatively that it was afterward discarded."

However, we held in *In Interest of Wheeler,* 229 N.W.2d 241, 244 (Iowa 1975), that the *Bellew* rule is inapplicable in a proceedings under chapter 232, The Code, where our review is *de novo,* permitting us to arrive at a new or modified determination based on admissible evidence only.

We hold there was no error by the trial court in its reception of the challenged materials.

■ V. In his original brief and argument on appeal, Harry urged as a statement for review his contention the court erred in permitting Bill Meister to testify as to his complicity in the criminal action committed by Harry without effectively advising Meister of his right to the benefit of counsel. In his reply brief, however, Harry concedes his lack of standing to advance

Meister's constitutional rights. In light of such concession, we give no further attention to the issue so stated for review.

VI. In his final issue stated for review, Harry contends there was insufficient evidence adduced at the hearing to support a finding beyond a reasonable doubt that he committed the arson at Middle School.

■■■ We again reiterate our conclusion reached in Division IV above that the reasonable doubt standard is not mandated in dispositional proceedings. Even if such a standard were required, however, we have reviewed the record of the hearing and have concluded sufficient competent evidence is present to satisfy that high level of proof. Our *de novo* review of the record satisfies us the trial court was correct in its adjudication and disposition of the matters before it.

■■■ We note the juvenile court judge in his order of April 4, 1975, committed Harry to the Director of the Bureau of Family and Children's Services for placement in the Iowa State Training School for Boys. The commitment of Harry to the Department was proper, but it was the responsibility of the Department to determine which of its facilities could best serve Harry's special needs and problems. See *In Interest of Kelly*, Iowa, 236 N.W.2d 50 (filed Dec. 17, 1975). We modify the juvenile court's order in this respect.

Modified and affirmed.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

Although due process does not impose the stringent principles of *Gault* and *Winship* upon a post-adjudicative juvenile proceeding, due process nevertheless is a requisite in such proceedings. Cf. *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

The difference in the post-adjudicative proceeding is in the process which is due. I believe the process which is due depends upon the nature and purpose of the proceeding.

After the November 15 adjudication of delinquency the child was placed in his home subject to supervision of a probation officer. § 232.34(2), The Code. Allegations of subsequent misconduct against the child resulted in the February hearing, the purpose of which was two-fold: (1) to inquire into the truth of the allegations, and (2) if the allegations were established, to determine the appropriateness of a different disposition. § 232.36, The Code. This proceeding was in many respects analogous to an adult probation or parole revocation hearing. The April hearing dealt solely with the choice of disposition.

I believe the minimum requirements of due process in a juvenile dispositional hearing under Code § 232.36, like the February hearing in this case, would include: (1) written notice to the child of the allegations upon which a change in disposition will be considered, (2) disclosure to the child of the evidence supporting those allegations, (3) an opportunity of the child to be heard in person and to present evidence, (4) the right of the child to confront and cross-examine adverse witnesses, (5) the right of the child to be represented by counsel throughout the proceeding, to be appointed by the court if he is indigent (see § 232.28, The Code), and (6) a written statement by the court showing the evidence relied on and reasons for any change in disposition. See *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In addition, the allegations supporting a change in disposition must be established by a preponderance of competent evidence. See *State v. Hughes*, 200 N.W.2d 559 (Iowa 1972). The child's right to confront and cross-examine adverse witnesses is defined and explained in *In re Delaney*, 185 N.W.2d 726 (Iowa 1971).

In the present case, the child complains the juvenile court relied on incompetent evidence in finding the allegations of mis-

conduct subsequent to the adjudication of delinquency were established in the February hearing. He also complains the competent evidence was insufficient to sustain those allegations. I concur with the majority because I believe, after *de novo* review of the record, that the allegations were sustained by a preponderance of competent evidence. It is not necessary under this record to determine whether the other requisites of due process were met.