In re the DETENTION OF
Daniel E. GARREN.

Daniel E. Garren, Appellant.

No. 99–1785.

Supreme Court of Iowa.

Dec. 20, 2000.

Pamela A. Vandel, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Scott D. Brown and Roxann M. Ryan, Assistant Attorneys General, for appellee State.

TERNUS, Justice.

The appellant, Daniel Garren, challenges the constitutionality of Iowa's Sexually Violent Predator Act, Iowa Code chapter 229A (1999), claiming (1) the act violates federal and state prohibitions against ex post facto laws, (2) the act violates federal and state prohibitions against double jeopardy, (3) the act deprives the appellant of substantive due process, (4) the act is unconstitutionally vague, and (5) the act violates the appellant's federal and state rights to equal protection. We find no merit in these contentions and affirm the trial court's judgment ordering the appellant's civil commitment for sexual offender treatment.

I. *Background Facts and Proceedings.*

In 1994 Garren was convicted of sexual abuse in the third degree in Polk County, Iowa, and incarcerated. Prior to this conviction, Garren had twice been convicted in California of lascivious acts with a child and had been imprisoned for these crimes. In two of the three cases the victim was an unrelated female under the age of fourteen. The age of the victim in the third case and her relationship to Garren does not appear in the record.

During Garren's confinement on the Iowa conviction, the State of Iowa filed a petition pursuant to chapter 229A requesting that the district court make a preliminary determination that probable cause existed to believe Garren "is a sexually violent predator" and is subject to civil commitment under chapter 229A. *See* Iowa Code §§ 229A.4, .7. The district court found that probable cause existed to believe that Garren suffered from a mental abnormality—pedophilia—and that based upon the evidence presented, this abnormality made "it likely that [Garren] will engage in predatory acts constituting sexually violent offenses if [he is] not confined in a secure facility." *See id.* § 229A.5. Accordingly, the court ordered Garren to be detained, pending evaluation and trial pursuant to Iowa Code sections 229A.5

and 229A.7. Garren's subsequent motion to dismiss on various constitutional grounds was denied by the district court.

At the scheduled trial on the State's petition, the parties stipulated to the pertinent facts. The court thereafter entered a ruling holding that the State had proven beyond a reasonable doubt that Garren is a sexually violent predator subject to civil commitment under chapter 229A. Garren appeals, arguing that the court erred in failing to grant his motion to dismiss.

### II. *Scope of Review.*

We recently summarized the principles governing our review of constitutional challenges to chapter 229A in *In re Detention of Morrow*, 616 N.W.2d 544 (Iowa 2000):

> This court reviews constitutional claims de novo. Statutes are cloaked with a strong presumption of constitutionality and, thus, a party challenging a statute "carries a heavy burden" of rebutting this presumption. " 'A person challenging a statute must negate every reasonable basis upon which the statute could be upheld as constitutional.' "

616 N.W.2d at 547 (citations omitted).

### III. *Nature of Sexually Violent Predator Act.*

Before we address the specific claims asserted by Garren on appeal, we consider an underlying issue that affects the constitutional protections to which Garren is entitled. That issue is whether the Sexually Violent Predator Act is civil or criminal in nature.

■ A. *General principles.* The determination of "whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction." *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749 (1980); *accord In re Matter of Aronson*, 440 N.W.2d 394, 396 (Iowa 1989). In *Ward*, the United States Supreme Court articulated a two-part test to be applied in

determining whether a statutory penalty is civil or criminal. 448 U.S. at 248–49, 100 S.Ct. at 2641, 65 L.Ed.2d at 749–50. The Court looks to

> whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, [the Court] inquire[s] further whether the statutory scheme [is] so punitive either in purpose or effect as to negate that intention.

*Id.* (citations omitted). In addressing the second step of this test, the Court relies on the factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), to ascertain the punitive nature of the statutory scheme, although these factors are neither "exhaustive nor dispositive." *Id.* at 249, 100 S.Ct. at 2641, 65 L.Ed.2d at 750. The factors set forth in *Kennedy* are

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....

372 U.S. at 168–69, 83 S.Ct. at 567–68, 9 L.Ed.2d at 660–61. These factors "must be considered in relation to the statute *on its face.*" *Id.* at 169, 83 S.Ct. at 568, 9 L.Ed.2d at 661 (emphasis added); *accord State v. Baehler*, 604 N.W.2d 601, 605 (Iowa 1999). Moreover, " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 100, 118 S.Ct. 488, 493, 139 L.Ed.2d 450, 459 (1997) (quoting *Ward*,

448 U.S. at 249, 100 S.Ct. at 2641, 65 L.Ed.2d at 749).

B. *Application of principles to commitment laws governing sexual offenders.* The United States Supreme Court has had two occasions to consider the civil or penal nature of a statute that permits the commitment of sexual offenders. *See Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). In both cases, the Court held that the commitment statutes were civil in nature and did not trigger the constitutional protections accorded criminal defendants. *See Hendricks,* 521 U.S. at 361, 117 S.Ct. at 2082, 138 L.Ed.2d at 515; *Allen,* 478 U.S. at 375, 106 S.Ct. at 2995, 92 L.Ed.2d at 308. Because the Kansas Sexually Violent Predator Act challenged in the *Hendricks* case is nearly identical to the Iowa act, we examine the Court's analysis in *Hendricks* in more detail.

Applying the first prong of the *Ward* test in *Hendricks,* the Court noted that the intent of the Kansas legislature to establish a civil proceeding was explicit in (1) the placement of the act within the probate code as opposed to within the criminal code, and (2) the legislature's description of the act as "a civil commitment procedure." *Hendricks,* 521 U.S. at 361, 117 S.Ct. at 2082, 138 L.Ed.2d at 514–15. Applying the second prong of the test and the *Kennedy* factors, the Court held that Hendricks had failed to meet his heavy burden of providing " 'the clearest proof' that 'the statutory scheme [is] so punitive either in *purpose* or *effect* as to negate [the State's] intention' to deem it 'civil.' " *Id.* at 361, 117 S.Ct. at 2082, 138 L.Ed.2d at 515 (emphasis added) (quoting *Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641, 65 L.Ed.2d at 749).

Concerning the statute's underlying *purpose,* the Court noted that commitment under the Kansas statute did not implicate either of the two primary objectives of criminal punishment: retribution or deterrence. *Id.* at 361–62, 117 S.Ct. at 2082, 138 L.Ed.2d at 515. Retribution was not a purpose because the act did not affix culpability for prior criminal conduct. *Id.* at 362, 117 S.Ct. at 2082, 138 L.Ed.2d at 515. Rather, the prior conduct was "used solely for evidentiary purposes, either to demonstrate that a 'mental abnormality' exists or to support a finding of future dangerousness." *Id.; accord Allen,* 478 U.S. at 371, 106 S.Ct. at 2993, 92 L.Ed.2d at 306 (rejecting committee's argument that statute's requirement of proof of "at least one act of or attempt at sexual assault or sexual molestation" was evidence of the statute's criminal nature, stating: "While here the State must prove at least one act of sexual assault, that antecedent conduct is received not to punish past misdeeds, but primarily to show the accused's mental condition and to predict future behavior."). The Court also noted that the act did not make criminal conviction a prerequisite for commitment—a person who had been charged with a sexually violent offense but had been found incompetent to stand trial or found not guilty by reason of insanity or not guilty because of a mental disease or defect was also subject to the statute. *Hendricks,* 521 U.S. at 352, 362, 117 S.Ct. at 2077, 2082, 138 L.Ed.2d at 509, 515. The Court held that the absence of criminal responsibility "suggests that the State is not seeking retribution for a past misdeed." *Id.* at 362, 117 S.Ct. at 2082, 138 L.Ed.2d at 515. Likewise, the absence of a requirement of scienter or intent was held to be evidence that the statute was not retributive in nature. *Id.*

The Court also concluded that it is unlikely that the legislature intended the commitment as a deterrent. *Id.* By the act's own definition, persons committed under it are "suffering from a 'mental abnormality' or a 'personality disorder' that prevents them from exercising adequate control over their behavior. Such persons are therefore unlikely to be deterred by the threat of confinement." *Id.* at 362–63, 117 S.Ct. at 2082, 138 L.Ed.2d at 515.

Considering the *effect* of the act, the Court noted that while it did impose an affirmative restraint upon the person committed, " 'the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment.' " *Id.* at 363, 117 S.Ct. at 2083, 138 L.Ed.2d at 516 (quoting *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697, 708 (1987)). In fact, the Court noted, "the confinement of 'mentally unstable individuals who present a danger to the public' " has been cited as a classic example of nonpunitive detention. *Id.* (quoting *Salerno,* 481 U.S. at 748–49, 107 S.Ct. at 2102, 95 L.Ed.2d at 710).

The Court also rejected Hendricks' argument that the commitment constituted punishment because it was for an indeterminate length of time. *Id.* at 363, 117 S.Ct. at 2083, 138 L.Ed.2d at 516. The Court observed that under the Kansas statute, if at any time the confined person is adjudged to be safe to be at large, he is entitled to immediate release and, furthermore, that the maximum amount of time that an individual can be held pursuant to a single judicial proceeding is one year. *Id.* at 363–64, 117 S.Ct. at 2083, 138 L.Ed.2d at 516. Contrary to any punitive purpose, "the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others." *Id.* at 363, 117 S.Ct. at 2083, 138 L.Ed.2d at 516.

**C. *Application of legal principles to Iowa act.*** We think the same analysis employed by the United States Supreme Court in *Hendricks* and *Allen* is applicable in this case.[1]

1. *Legislative intent.* The Iowa legislature expressly labeled the Sexually Violent Predator Act as civil in nature. *See* Iowa Code § 229A.1 (finding that "a *civil* commitment procedure for the long-term care and treatment of the sexually violent predator is necessary" (emphasis added)). The preamble to the statute also suggests that the purpose of the commitment is public safety and treatment of the committed individual rather than punishment. *See id.* ("existing involuntary commitment procedure[s] . . . [are] inadequate to address the *risk* these sexually violent predators pose to society . . . [and] the *treatment* needs of this population are very long-term and the *treatment* modalities . . . are very different from the traditional treatment modalities available in a prison setting or for persons appropriate for commitment under chapter 229" (emphasis added)). The legislature's intent to enact a civil statute is also implied from the placement of the law among code chapters dealing with the mentally ill; chapter 229 provides for the voluntary and involuntary hospitalization of persons with mental illness and chapter 230 concerns support of persons with mental illness. *See* Iowa Code chs. 229, 230; *see also Hendricks,* 521 U.S. at 361, 117 S.Ct. at 2082, 138 L.Ed.2d at 514–15 (holding placement of

---

1. Garren contends that *Hendricks* should not govern our disposition of his claims under the Iowa Constitution. It is true that this court is not required "to interpret the Iowa Constitution in line with the United States Constitution, as long as our interpretation does not violate any provision of the federal constitution." *State v. Cline,* 617 N.W.2d 277, 284–85 (Iowa 2000). Nonetheless, in considering whether a statute is civil or criminal in nature for purposes of state constitutional rights, we have relied in the past on federal case law. *See, e.g., State v. Pickens,* 558 N.W.2d 396, 398–99 (Iowa 1997) (applying *Kennedy* factors in determining civil nature of sex offender registration statute where defendant claimed the act violated the ex post facto provisions of the United States and Iowa Constitutions). Garren has suggested no legal deficiency in the federal principles governing this issue, nor has he offered an alternative test or guidelines for this court to apply in determining whether a statute is civil or criminal in nature. Therefore, we will continue to employ the federal analysis in addressing this issue under our state constitution. Accordingly, our discussion of this issue applies equally to Garren's state and federal constitutional claims.

commitment statute within probate code rather than within criminal code was evidence of intent to enact civil remedy). Additionally, a person determined to be a sexually violent predator under the statute is "committed for control, care, and treatment *by the department of human services,*" as opposed to the department of corrections, another indication of the civil nature of the commitment. Iowa Code § 229A.7 (emphasis added). As the United States Supreme Court stated in *Hendricks,* "Nothing on the face of the statute suggests that the legislature sought to create anything other than a civil commitment scheme designed to protect the public from harm." 521 U.S. at 361, 117 S.Ct. at 2082, 138 L.Ed.2d at 515.

2. *Kennedy factors.* In determining whether, despite the legislature's manifest intent, "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" to deem it civil, the court must closely examine the statute. *Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641, 65 L.Ed.2d at 749. As noted earlier, the *Kennedy* factors are helpful in this analysis. We will not engage in a lengthy discussion of the *Kennedy* factors, however, because there is no meaningful difference between the Iowa statute and the Kansas statute at issue in *Hendricks.* Therefore, we simply state that we agree with the conclusions reached by the United States Supreme Court and reviewed above with respect to the Kansas act and find them equally applicable here. Nonetheless, we will address the specific arguments raised by Garren in his brief.

Garren asserts that the act subjects only those who have been *convicted* of criminal offenses to secure confinement, thereby evidencing a punitive purpose. Chapter 229A, however, provides for the commitment of an individual upon evidence that the defendant was merely *charged* with a prohibited offense, so long as the court finds beyond a reasonable doubt that the individual committed the act or acts charged, regardless of the individual's sanity or competency. *See* Iowa Code § 229A.7(1). Thus, like the Kansas act, the Iowa act "does not make a criminal conviction a prerequisite for commitment—persons absolved of criminal responsibility may nonetheless be subject to confinement under the Act." *Hendricks,* 521 U.S. at 362, 117 S.Ct. at 2082, 138 L.Ed.2d at 515.

▪ In addition, persons adjudicated to be sexually violent predators are not committed solely on the basis that they have committed a sexually violent offense. Commitment under the act can only be achieved upon a finding that the individual is suffering from a mental abnormality that makes it likely that the individual will engage in future predatory acts of a sexually violent nature if not securely confined. *See* Iowa Code § 229A.2(8) (defining "sexually violent predator"). As noted in *Hendricks,* the mere fact that the act "may be 'tied to criminal activity' is 'insufficient to render the statute punitive.'" 521 U.S. at 362, 117 S.Ct. at 2082, 138 L.Ed.2d at 515 (quoting *United States v. Ursery,* 518 U.S. 267, 292, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549, 570 (1996)).

Garren also asserts, as evidence of the punitive nature of the act, that "[t]he Act fails to provide those committed [under chapter 229A] with the same privileges of mental health committees under Iowa Code chapter 229." Garren fails, however, to identify the privileges denied committees under chapter 229A. In addition, he does not elucidate any supportive reasoning as to why, if such privileges are not accorded under chapter 229A, this fact indicates the punitive nature of the statute. *See generally id.* at 377, 117 S.Ct. at 2089, 138 L.Ed.2d at 524 (Breyer, J., dissenting) ("The Constitution does not require [a state] to write all of its civil commitment rules in a single statute or forbid it to write two separate statutes each covering somewhat different classes of committable individuals.").

Garren also argues that operation of the facility used to house those committed un-

der chapter 229A by the Department of Corrections is further evidence of the punitive nature of the confinement. As noted in the statute, however, the *program* is operated under the auspices of the Department of Human Services. *See* Iowa Code § 229A.7. Moreover, the statute encompasses only those individuals, who, because of their propensity to recommit, must be held in a secure facility. The United States Supreme Court rejected a similar argument in *Allen.* In that case, persons adjudged sexually dangerous were committed to a psychiatric center housed at a maximum-security institution operated by the Illinois Department of Corrections. *Allen,* 478 U.S. at 372, 106 S.Ct. at 2993, 92 L.Ed.2d at 306. The center also provided treatment for convicts in need of mental health treatment. *Id.* The Court held that these facts did "not transform the State's intent to treat into an intent to punish." *Id.* at 373, 106 S.Ct. at 2994, 92 L.Ed.2d at 307. We reach the same conclusion here.

Garren also supports his contention that the statute is penal by arguing that any legislative intent to provide treatment is a sham and, therefore, confinement is necessarily excessive in relation to the purported desire to treat the committed person. *See generally Kennedy,* 372 U.S. at 168–69, 83 S.Ct. at 567–68, 9 L.Ed.2d at 661 (stating one factor to consider is whether the sanction "appears excessive in relation to the alternative purpose assigned"). He claims that if treatment of the committed individual were truly the concern of the State, treatment would not be delayed until the individual neared the end of his prison term. Garren also contends that treatment is more effective when the individual willingly participates. He asserts that offenders would be more willing participants if they were offered treatments such as hormone therapy or surgical procedures as an alternative to cognitive therapies. Because the offender is given no choice, treatment is less effective, thereby indicating, according to Garren, the absence of a sincere desire to treat the individual. Finally, Garren points to the State's failure to consider less restrictive alternatives as additional evidence of the punitive nature of the commitment. We will address each argument separately.

Garren correctly notes that chapter 229A, as it existed at the time of his trial, deferred diagnosis, evaluation, and commitment until a few weeks prior to the anticipated release of the offender,[2] and did not require commitment or treatment of sex offenders prior to the conclusion of their sentence. *See* Iowa Code § 229A.3(1). This fact does not mean, however, that no treatment was provided during Garren's prison term. To the contrary the record before us establishes that the parole board recommended that Garren attend the sex offender treatment program offered at the penal institution in which he was confined. Garren opted not to enter the program, however, because he was already involved in a computer class. He eventually did participate in the program, but failed to complete it. Although "the prognosis for rehabilitating sexually violent predators in a prison setting is poor," *see id.* § 229A.1, we do not think

---

**2.** Section 229A.3 states that the agency with jurisdiction of an individual who "may meet the definition of a sexually violent predator ... shall give written notice to the attorney general ... no later than ninety days prior to" certain events, including "the anticipated discharge of [the] person ... from total confinement." Iowa Code § 229A.3(1). At the time the State filed its petition in this case, section 229A.4 stated that "the attorney general may file a petition, *within seventy-five days of the date the attorney general received the written notice by the agency of jurisdiction pursuant to*

*section 229A.3....*" *Id.* § 229A.4(1) (emphasis added). In the 1999 legislative session, the general assembly omitted the emphasized language from *section 229A.4. See* 1999 Iowa Acts ch. 61, § 2. Consequently, there is no longer any time restriction on when the attorney general may initiate proceedings to have the inmate civilly committed for treatment. This amendment was not in effect, however, at the time the State filed its petition to commit Garren in February of 1999. *See id.* § 14 (making the amendment effective as of April 26, 1999).

the legislature's initial decision to attempt treatment during the term of confinement with the programs available in the penal institution detracts from the remedial purpose of the Sexually Violent Predator Act.

We also find unpersuasive Garren's argument that the act is punitive because the person committed is not allowed to choose his preferred method of treatment. Initially, it is important to remember that we must evaluate the nature of the statute *on its face.* There is no provision in the act limiting the treatment modalities available to committed offenders. Even if the treatment programs offered to those committed under chapter 229A were limited by the act, we do not think this fact would render the statute punitive. As the United States Supreme Court noted in *Hendricks,* "States enjoy wide latitude in developing treatment regimens." 521 U.S. at 368 n. 4, 117 S.Ct. at 2085 n. 4, 138 L.Ed.2d at 519 n. 4.

Finally, we find no merit in Garren's related complaint that less restrictive alternatives are not considered under the statute. By definition, a "sexually violent predator" is a person "likely to engage in predatory acts constituting sexually violent offenses, *if not confined in a secure facility.*" Iowa Code § 229A.2(8) (emphasis added). Obviously, less restrictive alternatives are not viable where the person committed has already been determined to be in need of treatment within "a secure facility."

3. *Conclusion.* Application of the *Kennedy* factors leads this court to the conclusion that Garren has failed to show by "the clearest proof" that the Iowa legislature "despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641, 65 L.Ed.2d at 750 (citations omitted). Therefore, we hold that the Sexually Violent Predator Act is civil in nature, not criminal.

IV. *Ex Post Facto Claim.*

■ Garren claims that chapter 229A may not be constitutionally applied to him because it retroactively punishes him for conduct occurring prior to the effective date of the act, a result prohibited by the ex post facto provisions of the federal and state constitutions. *See* U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . ex post facto Law. . . ."); Iowa Const. art. I, § 21 ("No . . . ex post facto law . . . shall ever be passed."). These constitutional provisions, however, apply only to penal or criminal laws. *See Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30, 38 (1990) ("the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them"); *State v. Flam,* 587 N.W.2d 767, 768 (Iowa 1998) ("the prohibition of ex post facto laws applies only to penal and criminal actions").

We have already determined that Iowa's Sexually Violent Predator Act is civil in nature, not criminal. Therefore, the protections of the Ex Post Facto Clause do not apply. Accordingly, Garren's claim for relief based on this constitutional provision must be rejected.

V. *Double Jeopardy.*

■ Garren's second challenge to chapter 229A rests on the Double Jeopardy Clauses of the United States and Iowa Constitutions. *See* U.S. Const. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . . ."); Iowa Const. art. I, § 12 ("No person shall after acquittal, be tried for the same offence."). He asserts that the commitment of sexually violent predators violates these guarantees because the commitment constitutes a second punishment for the same offense.

■ The double jeopardy prohibition applies only in criminal cases. *See Hudson,* 522 U.S. at 98–99, 118 S.Ct. at 493, 139 L.Ed.2d at 458–59. Since we have

already held that chapter 229A is civil in nature, not criminal, initiation of commitment proceedings under the statute does not constitute a second prosecution for purposes of double jeopardy. *See Hendricks,* 521 U.S. at 369, 117 S.Ct. at 2086, 138 L.Ed.2d at 519–20 (rejecting double jeopardy claim on the basis that Kansas's Sexually Violent Predator Act was not a criminal statute); *State v. Lange,* 531 N.W.2d 108, 117 (Iowa 1995) (rejecting double jeopardy challenge based on Iowa's drug stamp tax statute on the basis that the tax was not a criminal penalty).

VI. *Substantive Due Process.*

A. *General principles.* The Due Process Clause of the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. In similar language, the Iowa Constitution provides the same protection: "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. This court has traditionally considered the federal and state due process provisions to be equal in scope, import, and purpose. *See In re Interest of C.P.,* 569 N.W.2d 810, 812 (Iowa 1997); *Exira Cmty. Sch. Dist. v. State,* 512 N.W.2d 787, 792 (Iowa 1994). Therefore, the following discussion applies to both constitutional claims.

Under principles of substantive due process, the government is prohibited from engaging in arbitrary or wrongful actions " 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 113 (1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986)). A person's interest in freedom from bodily restraint is "at the core of the liberty protected by the Due Process Clause from arbitrary governmental actions." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437, 448 (1992).

This liberty interest is not, however, absolute. *See Hendricks,* 521 U.S. at 356, 117 S.Ct. at 2079, 138 L.Ed.2d at 512. Thus, "the government may detain mentally unstable individuals who present a danger to the public." *Salerno,* 481 U.S. at 748–49, 107 S.Ct. at 2102, 95 L.Ed.2d at 710 (citing *Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323, 331 (1979)). The United States Supreme Court rejected a substantive due process challenge to the Kansas Sexually Violent Predator Act in *Hendricks.* 521 U.S. at 360, 117 S.Ct. at 2081, 138 L.Ed.2d at 514. The Court stated:

A finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment. We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality." These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior.

*Id.* at 358, 117 S.Ct. at 2080, 138 L.Ed.2d at 512–13.

The Iowa act is also "plainly of a kind" with those civil commitment statutes upheld by the courts against a substantive due process challenge. In fact, as noted earlier, the Iowa act is identical to the Kansas statute in all significant respects, using the same definitions and the same standards. Garren argues, nonetheless, that the Iowa statute violates his substantive due process rights because it does not

provide for a less restrictive placement. We rejected a similar argument in *In re B.B.*, 516 N.W.2d 874, 878 (Iowa 1994).

In *In re B.B.*, a juvenile, adjudged to be delinquent, was committed to the State Training School while awaiting placement in highly structured group foster care. 516 N.W.2d at 877. He contended he had a substantive due process right to the least restrictive setting. *Id.* We held that neither state law nor the constitution gave him such a right. *Id.* at 878. We stated, "if institutional custody is constitutional, it does not become unconstitutional just because there may be a more desirable form." *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 303, 113 S.Ct. 1439, 1448, 123 L.Ed.2d 1, 17–18 (1993)).

■ Garren's substantive due process challenge does not rest upon a claim that institutional custody in this instance is unconstitutional. Rather, he merely asserts that a violation of his substantive due process rights exists because chapter 229A does not provide for the "least restrictive placement." As this court noted in *In re B.B.*, "Even if such a right did exist, it is not a 'fundamental' right. Therefore, substantive due process demands, at the most, that there be a reasonable fit between the governmental purpose and the means chosen to advance that purpose." *Id.* at 879 (citations omitted). We think there is a reasonable fit here between the State's purpose of protecting society from persons who have been determined to be likely to reoffend if not placed in a secure facility and their placement in such a facility. Therefore, Garren has failed to show a substantive due process violation.

## VII. *Vagueness.*

■ Although Garren states in a division heading in his brief that chapter 229A is vague as applied and on its face, he makes no argument in his brief in support of the contention that the statute is vague as applied to him. We deem this issue waived. *See* Iowa R.App.P. 14(a)(3) ("Failure in the brief to state, to argue or to cite to authority in support of an issue may be deemed waiver of that issue."); *State v. Cooley*, 608 N.W.2d 9, 13–14 (Iowa 2000) (holding issue waived where matter not addressed beyond reference in heading in brief). Consequently, Garren is precluded from arguing that the statute is unconstitutionally vague as applied to him. We turn now to his facial vagueness claim.

■ If a statute is constitutional as applied to the party claiming the law is vague, that party "lacks standing to make a facial challenge unless a recognized exception applies." *State v. Hunter*, 550 N.W.2d 460, 463 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000). One exception is where "First Amendment rights are implicated." *Id.* Another exception is "a situation where persons who are not parties to the suit 'stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves.'" *State v. Price*, 237 N.W.2d 813, 816 (Iowa 1976) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973)).

■ Garren has not addressed in his brief how this case falls within one of these exceptions. We have previously stated that this court will not "assume a partisan role and undertake [a party's] research and advocacy," especially where a party's failure to address a matter hinders our consideration of the issue. *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974). That is the situation here. Because Garren has not provided this court with any guidance on why the general rule that prohibits a person in his position from making a facial challenge to a statute does not apply, we apply the general rule and hold that he has no standing to make a facial attack on chapter 229A.

## VIII. *Equal Protection.*

■ Garren claims that his right to equal protection of the laws is violated by

the statute because he is treated differently than "all other recidivists." *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. We have previously determined that sexually violent predators are not similarly situated to other recidivists:

It is true that other prisoners may have committed violent offenses, may suffer from a mental disorder, and may be likely to repeat their prior offenses, but such prisoners are still dissimilar because their offenses are not sexual in nature. This difference in the nature of the prisoners' offenses is an adequate basis upon which to conclude that sexually violent predators and other violent offenders are not similarly situated and may be treated differently without violating the Equal Protection Clause.

*In re Morrow*, 616 N.W.2d at 548. We also held in *Morrow* that the classification of sexually violent offenders was reasonable. *Id.* at 549. We applied a rational basis standard in making this determination because Morrow had not preserved his claim that the reasonableness of the classification should be subjected to strict scrutiny. *Id.* at 548 n. 1.

In contrast, here, Garren contended in the trial court that his equal protection claim was to be judged under a strict scrutiny standard because the statute impacted his liberty—a fundamental right. Other courts have reached differing conclusions in deciding whether an involuntary commitment statute such as the one before us is subject to strict scrutiny, is evaluated under an intermediate, heightened level of review, or must merely have a rational basis for the classification made. *See, e.g., Martin v. Reinstein*, 195 Ariz. 293, 987 P.2d 779, 796 (Ct.App.1999) (applying rational basis test); *In re Hay*, 263 Kan. 822, 953 P.2d 666, 675 (1998) (applying strict scrutiny standard); *In re Linehan*, 557 N.W.2d 171, 186 (Minn.1996) (subjecting statute to "heightened scrutiny"); *In re Detention of Turay*, 139 Wash.2d 379, 986 P.2d 790, 806 (1999) (applying rational basis test). We need not resolve this question because we think chapter 229A passes muster even when judged under a strict scrutiny standard.

■ When judicial review is based upon strict scrutiny, "the statute will survive a constitutional challenge only if it is shown that the statute is narrowly drawn to serve a compelling state interest." *City of Panora v. Simmons*, 445 N.W.2d 363, 367 (Iowa 1989). We think the confinement of sexually violent predators who "will engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility," Iowa Code §§ 229A.2(8), .7, serves a compelling state interest—protection of the public. In addition, the statute is narrowly drawn to encompass only those individuals who, because of a "mental abnormality," are predisposed to sexually violent behavior. *See id.* § 229A.2(3), (8) (defining "mental abnormality" and "sexually violent predator"). Therefore, chapter 229A does not violate Garren's right to the equal protection of the law under the state or federal constitutions. *See In re Hay*, 953 P.2d at 675 (holding that nearly identical Kansas statute did not violate Equal Protection Clause when subjected to strict scrutiny).

IX. *Summary.*

We hold that the Sexually Violent Predator Act is a civil statute that does not implicate the state and federal Ex Post Facto Clauses or Double Jeopardy Clauses. In addition, the act does not violate Garren's constitutional rights to substantive due process or equal protection. Garren did not preserve his claim that the statute is vague as applied to him and he has no standing to assert that the act is facially vague. We conclude that the trial court did not err in overruling Garren's motion to dismiss.

**AFFIRMED.**