In re the DETENTION OF
Johnny C. SELBY.

Johnny C. Selby, Respondent–
Appellant.

No. 04–0806.

Court of Appeals of Iowa.

Dec. 7, 2005.

Mark Smith, First Assistant State Public Defender, and Matthew S. Sheeley, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines and Denise A. Timmins, Assistant Attorneys General, for appellee.

Heard by MAHAN, P.J., HECHT, J., and SCHECHTMAN, Senior Judge.*

MAHAN, P.J.

Johnny C. Selby appeals the jury verdict finding him to be a sexually violent preda-

* Senior judge assigned by order pursuant to    Iowa Code section 602.9206 (2005).

tor under Iowa Code chapter 229A (2003). He argues that (1) chapter 229A is facially unconstitutional because it violates both due process and equal protection and (2) the jury instruction given in his trial was improper. We affirm.

## I. *Background Facts and Proceedings*

Selby has a history of sexually abusing children. In 1985, he admitted committing lascivious acts with a child. In 1989, he was convicted of one count of second degree sexual abuse. In 2002, he pled guilty to indecent contact with a child.

On October 14, 2003, the State petitioned to have Selby committed as a sexually violent predator pursuant to Iowa Code chapter 229A. The district court found probable cause that Selby was a sexually violent predator. Selby filed a motion to dismiss the State's petition. His motion was denied. The jury trial began on April 27, 2004.

Two psychologists testified at Selby's commitment trial. Dr. Anna Salter testified that she measured Selby's risk of re-offense through three different tests: the Minnesota Sex Offender Screening Tool—Revised (MnSOST—R), the Rapid Risk Assessment for Sex Offense Recidivism (RRASOR), and the Static–99. Under the RRASOR, Selby has a 48.6 percent chance of re-offending in ten years. His risk according to the MnSOST—R was less than 50 percent within six years. According to the Static–99, he has a 52 percent chance of re-offending within fifteen years. Dr. Salter testified that Selby's risk of re-offending was higher than the estimates indicated by the tests. She further testified that because the tests only measure the risk of re-offending for a particular limited time period, the risk that Selby would re-offend sometime within his lifetime would likely be higher.

Dr. Lynn Maskell testified that Selby's risk assessments were worthless given his age of fifty-nine years. Dr. Maskell argued that the tests used by Dr. Salter were developed using populations younger than sixty years of age. Thus, such tests could distort the risk presented by a person of Selby's age. Based on a different study, Dr. Maskell concluded that the risk of re-offense for older offenders like Selby was less than four percent.

At the conclusion of the evidence, the court gave the jury the following instruction:

> It is your duty as jurors to determine if the Respondent, Johnny Selby, is or is not a sexually violent predator. In the event of a verdict that the Respondent is a sexually violent predator, you have nothing to do with confinement or treatment.

The jury found Selby to be a sexually violent predator. Selby appeals.

## II. *Standard of Review*

We review constitutional challenges de novo. *In re Detention of Williams*, 628 N.W.2d 447, 451 (Iowa 2001). Because the challenge here is to a statute, we begin with a presumption of constitutionality. *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005). Selby must prove chapter 229A is unconstitutional beyond a reasonable doubt. *Id.* If it is possible to construe the statute in more than one manner, we must adopt the construction that does not violate the Constitution. *Id.*

## III. *Merits*

Selby argues that chapter 229A is unconstitutional on its face. First, he claims the statute violates due process because it fails to contain a temporal limitation for calculating a predator's risk of re-offense. Second, he argues that the statute violates

equal protection on its face because it requires a standard of proof for commitment different from the standard required to commit similarly situated individuals under Iowa Code chapter 229 (2003). Finally, Selby argues the court's instruction stating that jurors had nothing to do with confinement or treatment was in error. We review each of his claims in turn.

## A. Due Process

■ Under the Due Process Clause of the Fourteenth Amendment, no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Iowa Constitution provides, in similar language, that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. 1, § 9. We consider both the federal and the state due process provisions "to be equal in scope, merit, and purpose." *In re Detention of Garren,* 620 N.W.2d 275, 284 (Iowa 2000).

We engage in a two-step analysis when evaluating substantive due process · challenges. *State v. Hernandez–Lopez,* 639 N.W.2d 226, 238 (Iowa 2002). First, we determine whether the asserted right is fundamental. *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993); *Hernandez–Lopez,* 639 N.W.2d at 238. Second, if the right is fundamental, then we must determine whether the government action violating the right is narrowly tailored to achieve a compelling government interest. *Flores,* 507 U.S. at 305, 113 S.Ct. at 1448, 123 L.Ed.2d at 18; *Hernandez–Lopez,* 639 N.W.2d at 238. If the right is not fundamental, then there need only be a reasonable fit between the government purpose and the means used to advance that purpose. *Flores,* 507 U.S. at 305, 113 S.Ct. at 1448, 123 L.Ed.2d at 18; *Hernandez–Lopez,* 639 N.W.2d at 238.

The right Selby asserts, liberty, is widely recognized as fundamental. *E.g., Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437, 448 (1992). An individual's liberty interest, however, is not absolute. *Garren,* 620 N.W.2d at 284. In fact, the government's interest in detaining mentally unstable individuals who present a public danger has been found to be compelling. *See Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 331 (1979) (noting that "the state has legitimate interest under its *parens patriae* power" to care for the mentally unstable and "authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill"). *See generally United States v. Salerno,* 481 U.S. 739, 748–49, 107 S.Ct. 2095, 2102, 95 L.Ed.2d 697, 709–10 (1987) (noting "we have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest" and listing dangerous· mentally unstable individuals as· an example of the foregoing).

Selby essentially claims that chapter 229A is not narrowly tailored. He argues that the statute violates due process because it permits commitment through showing that the offender is more likely than not to re-offend at some point within his lifetime. He argues that, in order to pass constitutional muster, the likelihood of re-offense must be within a shorter time period, such as within the immediate future.[1]

---

**1.** Though the Iowa courts have not addressed this precise question, we have had numerous occasions to rule on the constitutionality of other aspects of chapter 229A. *See, e.g., In re Detention of Willis,* 691 N.W.2d 726, 729–30 (Iowa 2005) (holding the act for which a

In order to justify involuntary commitment, a person must not only be mentally ill, but also dangerous. *O'Connor v. Donaldson,* 422 U.S. 563, 575–76, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396, 406–07 (1975); *Stamus v. Leonhardt,* 414 F.Supp. 439, 450–51 (S.D.Iowa 1976) ("Due process and equal protection require that the standards for commitment must be (a) that the person is mentally ill and poses a serious threat of substantial harm to himself and others; and (b) that this threat of harm has been evidenced by a recent overt act or threat." (quoting *Doremus v. Farrell,* 407 F.Supp. 509, 514–15 (D.Neb.1975))). The United States Supreme Court upheld a Kansas statute substantially similar to Iowa's chapter 229A against a due process challenge. *Kansas v. Hendricks,* 521 U.S. 346, 358–60, 117 S.Ct. 2072, 2079–2081, 138 L.Ed.2d 501, 511–14 (1997). The Court noted "we have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as 'mental illness' or 'mental abnormality.'" *Id.* at 358, 117 S.Ct. at 2080, 138 L.Ed.2d at 512–13. It concluded the Kansas statute comported with due process because it "requires a finding of future dangerousness and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." *Id.* Chapter 229A requires the same findings.

Selby's claim, however, has more to do with what type of proof should be allowed to show future dangerousness. He argues that evidence of an offender's lifetime risk allows the State to extrapolate a higher possibility of re-offense. Selby claims that allowing evidence as to an individual's lifetime risk allows the individual to be confined for acts that may be committed at some time in the indefinite future. As a result, the offender may not be sufficiently dangerous to satisfy due process requirements at the time of commitment. We find Selby's arguments unconvincing for two reasons: (1) the present tense language of chapter 229A requires that a person be found to be both dangerous and to have a mental abnormality at the time of the proposed commitment and (2) chapter 229A provides for a yearly review of the individual's condition.

Under chapter 229A, a sexually violent predator is

a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

person is confined may be the recent overt act required by due process); *In re Detention of Barnes (Barnes II),* 689 N.W.2d 455, 460 (Iowa 2004) (concluding that to satisfy the "mental abnormality" requirement of chapter 229A, "due process does not require the person subject to commitment to have an underlying condition or diagnosis that causes people in general to commit sexually violent offenses" as long as "the condition or disorder predisposes the particular person ... to commit sexually violent offenses"); *In re Detention of Cubbage,* 671 N.W.2d 442, 445–48 (Iowa 2003) (holding no constitutional right to competence during chapter 229A proceedings); *In re Detention of Ewoldt,* 634 N.W.2d 622, 622–23 (Iowa 2001) (holding chapter 229A does not violate due process, double jeopardy, or ex post facto protections); *Williams,* 628 N.W.2d at 451–454 (holding chapter 229A does not violate equal protection); *Garren,* 620 N.W.2d at 278–83 (holding chapter 229A does not violate equal protection and due process does not require the least restrictive placement); *In re Detention of Morrow,* 616 N.W.2d 544, 547–50 (Iowa 2000) (holding chapter 229A violates neither equal protection nor the right to a jury trial).

Iowa Code § 229A.2(11). A person is "likely to engage in predatory acts of sexual violence" if that person

more likely than not will engage in acts of a sexually violent nature. If a person is not confined at the time that a petition is filed, a person is *"likely to engage in predatory acts of sexual violence"* only if the person commits a recent overt act. *Id.* § 229A.2(4). A mental abnormality is a condition that "predispose[s] that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others." *Id.* § 229A.2(5).

Once an individual is found to be a sexually violent predator, the individual is entitled to an annual review. There is a rebuttable presumption that commitment will continue. *Id.* § 229A.8(1). If sufficient facts exist, a hearing will be held to determine whether the person "no longer suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if discharged." *Id.*

The language of chapter 229A clearly indicates by its use of the present tense that an individual must be both dangerous and possess a mental abnormality that makes the individual likely to engage in sexually violent predatory acts at the time of commitment. For example, a sexually violent person is defined as one who *"suffers* from a mental abnormality which *makes* the person likely to engage" in sexually predatory acts. Iowa Code § 229A.2(11) (emphasis added). A mental abnormality is defined as a "condition *affecting* the emotional or volitional capacity of a person...." *Id.* § 229A.2(5) (emphasis added). Based on this language, a person must currently be suffering from a mental abnormality that makes the person likely to engage in sexually violent predatory acts. If the person is not confined at the time of the hearing, there must be some "recent overt act." *Id.* § 229A.2(4). A recent overt act has been found sufficient for a finding of dangerousness. *State v. Huss,* 666 N.W.2d 152, 161 (Iowa 2003). The mental abnormality along with the recent overt act therefore makes the individual a present and immediate threat to the community. Thus, due process is satisfied because, under the statute, a person must be found both dangerous and mentally ill at the time of commitment.[2]

In addition, chapter 229A requires an annual examination of the committed individual's condition. Iowa Code § 229A.8. Commitment is not necessarily indefinite. Rather, it is to last no longer than the person is dangerous or suffers from a mental abnormality which makes the person likely to engage in sexually violent predatory acts. *See Hendricks,* 521 U.S. at 364, 117 S.Ct. at 2083, 138 L.Ed.2d at 516.

Because we can construe chapter 229A in a constitutional manner, there is no reason to declare it facially unconstitutional simply because it does not provide an explicit time frame for the adjudication of dangerousness. The presence of present tense language and the annual review provision allow 229A to comport with due process requirements.

Selby's chief complaint is that testimony as to his lifetime risk of re-offense was allowed at trial. This is an evidentiary

---

2. The California Supreme Court used a similar analysis to find the California sexual predator act constitutional. *See Hubbart v. Superior Ct.,* 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584, 597–601 (1999); *see also Beasley v. Molett,* 95 S.W.3d 590, 599–601 (Tex. App.2002) (concluding Texas sexual predator act satisfies the due process proof requirement by requiring the individual be a "menace," and defining "menace" as "a threat or imminent danger").

problem we cannot decide based upon the record presented to us. Because Selby raised none of the necessary evidentiary objections, we cannot review them.

### B. *Equal Protection*

■ Selby argues that chapter 229A violates his right to equal protection under the law. Equal protection is guaranteed to all persons pursuant to both the Fourteenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution. Both provisions require that similarly situated individuals be treated the same for equal protection purposes. *Williams,* 628 N.W.2d at 452. We apply the same analysis to both state and federal equal protection claims. *Morrow,* 616 N.W.2d at 547.

Selby claims that individuals to be committed pursuant to chapter 229A and individuals to be committed pursuant to Iowa Code chapter 229 (2003) are similarly situated but are not given similar treatment under Iowa law. These individuals are similarly situated, he argues, because both chapter 229 and chapter 229A were enacted to confine and treat individuals who are both mentally ill and a danger to the community. The statutes, however, differ in the standard of proof required to show dangerousness. Chapter 229 requires that it be "probable or reasonably to be expected" that a person will be a danger to the community". *In re Oseing,* 296 N.W.2d 797, 801 (Iowa 1980). Chapter 229A, in contrast, requires that a person be "more likely than not" to re-offend. Iowa Code § 229A.2(4). As a result, Selby claims, similarly situated individuals facing commitment under either chapter 229 or chapter 229A are treated differently.

Selby takes the argument one step further, contending that chapter 229A permits commitment without any proof that a person presents an imminent threat to the community. This lenient standard, he claims, violates his fundamental right to a fair trial under the Fourteenth Amendment to the United States Constitution and article 1, sections 6, 9, and 10 of the Iowa Constitution. Due to the violation of his fundamental right, Selby urges us to use strict scrutiny to examine the State's standard of proof for dangerousness under chapter 229A as compared to chapter 229.

Selby's argument is similar to the claims the supreme court addressed in *Morrow, Garren,* and *Williams.* In *Morrow,* the appellant argued he was being treated differently than other "violent offenders ... with antisocial personality disorder[s] who have served their prison sentences and are due for release." *Morrow,* 616 N.W.2d at 548. The court concluded that "sexually violent predators are not similarly situated to other violent offenders." *Id.* That court also concluded that the classification of sexually violent predators is reasonable given the legislative findings in 229A.1. *Id.* (noting that Morrow had not preserved his strict scrutiny argument for appeal).

In *Garren,* the appellant argued that his right to equal protection was violated by chapter 229A because the statute caused him to be treated differently than other recidivists. *Garren,* 620 N.W.2d at 286. He also urged the court to adopt a strict scrutiny analysis because his fundamental right to liberty was at stake. *Id.* The court noted that several other courts have come to different conclusions about whether statutes such as chapter 229A should receive rational basis, heightened scrutiny, or strict scrutiny review. *Id.* Without deciding the question, the court found that chapter 229A passed constitutional muster under strict scrutiny. *Id.*

The appellant in *Williams* argued that chapter 229A violated his right to equal protection because "it treats mentally ill sexual offender commitments differently

than other mentally ill civil commitments." *Williams,* 628 N.W.2d at 451. His argument, like Selby's, rested on the assumption that sexual predators are similarly situated to mentally ill persons committed pursuant to chapter 229. *Id.* at 451–52. Since no court has applied strict scrutiny to classifications by type of mental illness or abnormality, the court found that rational basis review was proper. *Id.* at 453. According to *Williams,* " '[t]he particularly devastating effects of sexual crimes on victims, and the offenders' need for specialized treatment provide a rational basis for the classification.' " *Id.* at 454 (quoting *Morrow,* 616 N.W.2d at 549).

Applying the above precedent, we conclude that even before adjudication as sexually violent predators, individuals subject to commitment under chapter 229A are not similarly situated to individuals subject to commitment under chapter 229. In order to be committed under chapter 229A, a person must (1) be convicted or charged with a sexually violent offense; and (2) suffer from a mental abnormality which makes the individual more likely to commit sexually violent predatory acts. Iowa Code § 229A.2(11). Individuals subject to commitment under chapter 229 may be both mentally ill and dangerous, but it is not necessary that they commit a sexually violent offense. Additionally, "their mental illness does not predispose them to commit sexually violent acts." *Williams,* 628 N.W.2d at 454; *see also People v. Calderon,* 124 Cal.App.4th 80, 21 Cal. Rptr.3d 92, 102 (2004) (concluding sexually violent predators and mentally disordered offenders are not similarly situated).

Furthermore, "classifications of the mentally ill have historically been analyzed under the rational basis test even when individual liberty was at stake." *Williams,* 628 N.W.2d at 453 (citing *Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d

779, 795–796 (Ct.App.1999)). Selby claims the "more likely than not" standard implicates his fundamental right to a fair trial in addition to his liberty interest. We find no reason to apply strict scrutiny to the alleged violations of the fair trial right if we would not apply such a standard to alleged violations of the right to liberty. Therefore, we conclude it is proper to review Selby's equal protection claim under a rational basis analysis.

We must also conclude that the legislature's classification of sexually predatory offenders is rationally related to a legitimate government purpose. " 'The particularly devastating effects of sexual crimes on victims, and the offender's need for specialized treatment provide a rational basis for the classification.' " *Id.* at 454 (quoting *Morrow,* 616 N.W.2d at 549).

Even if we were to conclude that the statute was subject to strict scrutiny because it implicates both the right to a fair trial and the right to liberty, we would have to conclude it passes constitutional muster. First, the "more likely than not" standard (the standard that Selby claims permits commitment without any proof that a person presents an imminent threat to the community) is actually a higher standard of proof than the "expected or reasonable probability" standard used in chapter 229. *See Strickland v. Washington,* 466 U.S. 668, 693–694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 697–98 (1984) (discussing the differences between the higher standard of "more likely than not" and the lower standard of "reasonable probability"); *see also Heller v. Doe,* 509 U.S. 312, 321–31, 113 S.Ct. 2637, 2643–2648, 125 L.Ed.2d 257, 271–78 (upholding Kentucky statute that assigned a lower standard of proof to commitment proceedings for mental retardation and a higher standard of proof to commitment proceedings for mental illness.) Second, the supreme court

held in *Garren* that chapter 229A passed strict scrutiny. *Garren,* 620 N.W.2d at 286.

### C. *Jury Instruction*

The precise issue Selby raises was recently decided in *In re Detention of Crane,* 704 N.W.2d 437 (Iowa 2005). In *Crane,* the trial court gave jurors the same instruction as was given at Selby's trial. Selby's argument is the same as Crane's argument: the instruction that the jurors had nothing to do with confinement or treatment was a material misstatement of the law and is misleading and confusing. We repeat the supreme court's conclusion here:

> We find nothing erroneous or confusing about the instruction. It is true commitment was a mandatory consequence of the jury's verdict that [respondent] was a sexually violent predator. The instruction, however, simply told the jurors that they had to determine whether the respondent was a sexually violent predator and instructed them not to concern themselves with the consequences of their decision, which might include treatment and confinement. The instruction accurately stated the law.
>
> . . . .
>
> Jurors are not naïve; these jurors knew that if they found [respondent] a sexually violent predator, he would be committed—and probably for a long time. The court's instruction simply told jurors they should not concern themselves with [respondent's] subsequent treatment or confinement, but rather, focus upon whether he was a sexually violent predator. The court's instruction was not erroneous or misleading.

*Crane,* 704 N.W.2d at 439–40. We find that chapter 229A does not on its face violate due process or equal protection, and that the instruction in question was not improper.

**AFFIRMED.**