# IN THE COURT OF APPEALS OF IOWA

No. 14-1863
Filed February 25, 2015

IN THE INTEREST OF R.M.,
      Minor Child,

C.R., Mother,
      Appellant,

STATE OF IOWA,
      Appellant,

A.M., Father,
      Appellee/Cross-Appellant.
_____

      Appeal from the Iowa District Court for Marion County, John D. Lloyd,
Judge.


      The State and the mother of a child adjudicated in need of assistance
appeal from a permanency order granting the father six additional months of
services and visitation. **AFFIRMED.**


      William E. Sales III of Sales Law Firm, P.C., Des Moines, for mother.

      Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney
General, and Ed Bull, County Attorney, for appellant-State.

      Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for father.

      Marshall Orsini, Des Moines, attorney and guardian ad litem for minor
child.

      Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

R.M., now age five, has been removed from his father's custody since October 2013 based on a confirmed report the father denied the child critical care. In October 2014, the juvenile court entered a permanency order under Iowa Code section 232.104(2)(b) (2013) keeping the child's placement with his mother, but continuing for an additional six months reasonable efforts to reunite R.M. with his father, including increased visitation. The State and the mother appeal from that permanency order, contending the court should have placed R.M. in the mother's sole legal custody under section 232.104(2)(d). The father cross-appeals a finding in the permanency order that the Department of Human Services had been making reasonable efforts to reunify him with his son.

Following our de novo review,[1] we affirm the permanency order. The evidence presented at the hearing warranted a delay in permanency and the court set out conditions of visitation to be offered by the DHS and expected behavioral changes on Adam's part that formed its basis for deciding the need for removal could be resolved at the end of the six months. *See* Iowa Code § 232.104(2)(b). As for the cross-appeal, we conclude Adam's challenge to DHS

---

[1] We review permanency orders de novo, sorting through both the facts and law and adjudicating rights anew on the issues properly presented on appeal. *In re A.T.*, 799 N.W.2d 148, 150–151 (Iowa Ct. App. 2011). We give weight to the factual findings of the juvenile court, but are not bound by them. *Id.* The parties contend we review the decision to delay permanency for an abuse of discretion, citing an unpublished case of our court predating *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating "the proper standard of review for all termination decisions should be de novo"). We need not decide today whether a decision to grant a six-month extension under section 232.104(2)(b) is subject only to de novo review or whether the previously applied abuse-of-discretion standard also comes into play. Under either standard, we conclude the juvenile court should be affirmed here.

reasonable efforts predating the permanency hearing was rendered moot by the visitation ordered in the six-month extension and decline to address that issue. *See In re B.B.*, 516 N.W.2d 874, 877 (Iowa 1994) (holding issue is moot if it no longer presents a justiciable controversy because it has become academic).

## I.      Background facts and proceedings

R.M. is the son of Adam and Christine; the parents are not married to each other.  The district court previously entered a decree awarding the parents joint legal custody, placing physical care with Christine, and granting Adam overnight visitation every other weekend and two evening visits during the week.

The parents were operating under this decree in August 2013 when R.M. came home from visiting Adam with a mark on his neck.  When Christine asked what happened, R.M. said Adam wrapped duct tape around his head and rubbed soap in his eyes.  A DHS investigation confirmed the child's allegation as a denial of critical care.  Adam has continually denied the allegation.  The State charged Adam with neglect of a dependent person, but dismissed that prosecution in March 2014.[2]

As a result of this incident, the juvenile court adjudicated R.M. as a child in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2)[3] in an order

---

[2] A no-contact order in the criminal case prohibited Adam from interacting with his son. The order was modified in December 2013 to allow visitation under DHS supervision.

[3] The section reads:

> "Child in need of assistance" means an unmarried child: . . .  c. Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following: . . .  (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

Iowa Code § 232.2(6)(c)(2) (2013).

issued December 18, 2013. That order found the father was "responsible for physical abuse against the child." The order placed discretion for visitation with the DHS, and upon the recommendation of the child's therapist. The court ordered Adam to obtain a substance abuse evaluation and, if recommended by the evaluation, use a SCRAM device to detect his alcohol use. Adam obtained a substance abuse evaluation on January 8, 2014. The evaluator did not recommend any treatment.

Visitation between Adam and R.M. was a long time coming. At a disposition hearing on February 12, 2014, Adam argued DHS was not making reasonable efforts at reunification because he had not been allowed visitation with his son.[4] At a disposition hearing on May 20, 2014, the court ordered Adam to engage in counseling to "enable him to deal with [R.M.'s] perception of abuse." The court also ordered visitation would resume "as [R.M.'s] counselor and [Adam's] counselor shall in consultation determine that such contact can be accomplished with minimal risk to [R.M.'s] well-being."[5] This arrangement was foiled in early July when Christine took R.M. out of therapy without informing Adam.[6]

---

[4] While the parties were awaiting the ruling from the February hearing, the juvenile court judge assigned to the case recused himself because of ex parte contact from a member of Adam's family. District Court Judge John Lloyd was assigned to the case.

[5] The court also ordered R.M. have contact with his paternal grandparents. Christine had not allowed Adam's family to see R.M. since August 2013.

[6] Christine did inform the family safety, risk, and permanency (FSRP) worker, but the worker did not tell Adam, his attorney or the DHS case manager. In a similar lack of communication, the court learned at the permanency hearing that the FSRP worker had been sharing her reports with Christine, but not Adam. Adam only received the reports as a proposed exhibit before the hearing.

On July 10, 2014, Adam filed a motion for hearing on reasonable efforts. In his motion he requested the following: visitation, regular contact with DHS regarding R.M.'s progress in therapy, a new DHS worker, and any services that could help address perceptions of abuse. The first visit between Adam and R.M. occurred on July 29, 2014.

The court held the permanency hearing on October 1, 2014. The court also considered Adam's motion claiming DHS failed to make reasonable efforts and a motion filed by Christine to reconsider or stay visitation. The court issued its permanency order on October 24, 2014, granting Adam an additional six months to achieve reunification. The court set the following schedule: additional visitation to be supervised by the paternal grandfather starting no later than thirty days from the ruling, after ninety days Adam would get at least one overnight visit every other weekend, and within five months visitation was to return to the parents' district court decree schedule. The court also found DHS had made reasonable efforts. In addition, the court granted concurrent jurisdiction.

Christine filed a notice of appeal on November 7, 2014, and the State filed a notice of appeal on November 10, 2014. Also on November 10, 2014, Christine asked the supreme court to stay the permanency order. That same day in the juvenile court, Adam filed a motion under Iowa Rule of Civil Procedure 1.904(2) to amend or enlarge the findings of fact and conclusions of law in the permanency order. On November 24, 2014, the supreme court denied Christine's motion to stay and remanded the case for a ruling on Adam's rule 1.904(2) motion.

In his motion to enlarge or amend, Adam alleged the DHS was cancelling many of his scheduled visits because "the professional parties in this case have taken the unfortunate position that if the child doesn't want a visit the parties will not 'force him.'" The motion alleged R.M. would refuse to visit when Christine drove him, but was not reluctant to see his father when the FSRP worker provided transportation. As a result, Adam asked the court to amend the ruling in several regards. First, Adam asked the court to clarify that it adopted the DHS case permanency plan with certain exceptions, including provisions concerning Adam's alcohol use and the graduated visitation schedule. Next, Adam asked the court to make the following enlargements:

> b. Add a finding of fact indicating that the concerns in regards to father's ability to safely care for the child will have been fully addressed within 6 months so long as the Father continues in therapy and continues to address the child's reality of abuse.
> c. Add a finding that all parties are to cooperate in effectuating the visitation schedule as set out in Paragraph (6) of the Permanency Order, and that the Child should not be allowed to unilaterally cancel the visits. Parties are to facilitate visitation and are cautioned that failure to facilitate that visitation or interfere with the same may be grounds for that party to be held in contempt of the Court's order.
> d. Add a finding that the Mother is not to transport the child to visits and that all transportation of the child to visits be provided by the FSRP worker. Specifically, indicate that the Mother and Father are to have no contact during the visitation exchanges.

The district court granted the motion in its entirety on November 25, 2014. We now address the challenge by the mother and the State to the court's granting of additional time.

**II.    Analysis**

Following a permanency hearing, a juvenile court has four options:

a. Enter an order pursuant to section 232.102 to return the child to the child's home.
b. Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order.  An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.
c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.
d. Enter an order . . . to . . . [t]ransfer sole custody of the child from one parent to another parent.

Iowa Code § 232.104(2).

In this case, the juvenile court went with (b)—providing Adam an additional six months to work toward reunification.  The State and Christine argue the permanency order was improper because it did not "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  They also contend the evidence did not warrant a delay of R.N.'s permanency.

By our reading, the permanency order meets the specificity requirement in the statute.  The order directs the parties to comply with the DHS case permanency plan with certain modifications.  The order sets out guidelines for Adam's alcohol use, directs him to attend therapy and discuss the abuse issue, directs R.M. to be in therapy, and gradually increases visitations so that Adam

will have the chance for more meaningful contact with his son. We conclude the order complies with section 232.104(2)(b).

Next, we turn to the evidence supporting the juvenile court's decision to give Adam more time to eliminate the need for removal of R.M. from his care. Removal was prompted by R.M.'s report that his father wrapped duct tape around his mouth and rubbed soap in his eyes. While the DHS found the child credible in reporting this incident, the assessment also noted the child was not injured as a result. The incident, though troubling, appears to be isolated, as the record reveals no other reports of neglect or abuse. Christine's reports that R.M. cried or was fearful of his visits with Adam were inconsistent with observations of the FSRP worker.[7] The FSRP worker testified Adam and R.M. have an affectionate bond and visits were going well in the summer and fall of 2014.

The State is rightly concerned with Adam's failure to acknowledge any wrongdoing. Parents' refusal to address their role in a child's abuse may hurt their chances of regaining custody. *In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002). But a parent's insistence he is innocent cannot automatically disqualify him from resuming custody. Our supreme court has said: "The State may require parents to otherwise undergo treatment, but it may not specifically require an admission of guilt as part of the treatment." *Id.*

Adam has seen a therapist to address the aftermath of the abuse alleged by his son and has been ordered to attend therapy as a condition of the

---

[7] The record revealed that R.M. would make comments to Adam that seemed to be prompted by an adult, such as "why are you being mean to my mom" and "why are you drinking." The juvenile court observed: "I spent 40 years in this business, and as far as I'm concerned, I've got a kid being used as a little weapon in this case."

permanency order. While Adam still denies the August 2013 incident, the therapists working with him and R.M. will be helpful to the juvenile court in ultimately deciding if Adam can be a safe caretaker even in the absence of an admission.

In addition to their focus on the abuse allegation, both the State and the mother allege Adam has not dealt with an alcohol abuse problem.[8] Adam has alcohol-related convictions, but testified he does not believe he has a drinking problem. Adam also gave a concerning answer regarding how many instances of public intoxication would signal a drinking problem. But when directed to do so by the court, Adam promptly obtained a substance abuse evaluation, which recommended no treatment was necessary. When asked in an earlier hearing what he disclosed to the evaluator about his alcohol consumption, Adam responded: "I said I'm a normal 28-year-old single guy. I like to hang out with my friends, watch football, have some drinks every now and then." The DHS worker did not report any problem with Adam being under the influence during visits with R.M. Still, the juvenile court ordered Adam not to drink alcohol within twelve hours of any visit with R.M. On this record, we do not view Adam's alcohol use as sufficient cause to deny the six-month extension.

Finally, we address Christine's argument that the permanency order's "regimented increase in contact" between Adam and R.M. presupposes "an ultimate reunification without concern as to the child's readiness for it." Christine admits "deliberately increasing contact is absolutely proper" and in R.M.'s best

---

[8] The State highlights Adam's disinclination to wear an alcohol monitoring device called a "SCRAM bracelet." Such monitoring was never ordered by the court.

interests, but she questions the lack of ongoing review. Adam counters that by granting his motion to amend, the court "set out the steps that will need to be completed to obviate the concerns that brought this family" to the attention of DHS. We agree with Adam.

The court appropriately directed the DHS to make specific efforts to increase visits and to protect R.M.'s welfare. Because the DHS delayed visitation between Adam and R.M. from December 2013 until July 2014, the court did not have sufficient information at the permanency hearing to place sole custody with the mother under section 232.102(2)(d).[9] Given the history of this case, the court acted reasonably in imposing targeted visitation milestones on the DHS. The review hearing scheduled for March 13, 2015, will provide the parties an opportunity to assess Adam's progress toward reunification.

**AFFIRMED.**

---

[9] The court's ability to monitor progress could have occurred more quickly if Christine had not unilaterally taken R.M. out of therapy without informing Adam.